IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KAREN R. JACKSON,

        Plaintiff,

v.                                                Case No. 23-1185-JWB

LM GENERAL INSURANCE
COMPANY,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment. (Doc. 52.) The motion is fully briefed and ripe for decision. (Docs. 54, 55, 58.) The motion is DENIED for the reasons stated herein.

**I.    Facts**

The dispute arises from a three-way car accident involving Plaintiff, Caitlim T. Schlickau, and Thomas Boyd that occurred on September 10, 2018. Ms. Schlickau rear-ended Plaintiff, and both Plaintiff and Defendant stipulate that Ms. Schlickau is 100 percent at fault. (Doc. 48 at 2.) Ms. Schlickau's insurance policy had a liability limit of $50,000. (*Id.*) Plaintiff's insurance policy through Defendant included underinsured motorist coverage in the amount of $250,000. (*Id.*) Ms. Schlickau was operating an underinsured motor vehicle, according to the terms of the policy issued by Defendant, when the accident occurred. (*Id.*) Plaintiff entered into a tentative settlement agreement with the underinsured motorist. (*Id.*) Plaintiff gave Defendant notice before settling the claim for the policy limits, and Defendant gave Plaintiff permission to resolve the liability claim. (*Id.*)

Plaintiff received medical treatment after the car accident. On the same day, she was treated at Hutchinson Regional Medical Center. (*Id.* at 2–3.) She also sought chiropractic care from September 13, 2018, through February 4, 2019. (*Id.* at 3.) She also underwent physical therapy from August 28, 2018, through November 13, 2019. (*Id.* at 3.) On January 28, 2019, Dr. John Fan performed a procedure on Plaintiff during which he implanted a spinal cord stimulator. (Fan Dep., Doc. 55-1, Vol. 2 at 105:18–22.) Plaintiff had the procedure done at the Hutchinson Clinic Ambulatory Center.[1] (*Id.*, Vol. 1 at 6:12-20, 44:7–23.) Medtronics manufactures the spinal cord stimulator. (*Id.*, Vol. 2 at 16:18-21.) Plaintiff and Defendant agree that Doctor Fan and a Medtronics representative post-operatively monitored Plaintiff.[2] (*Id.*, Vol. 1 66:4–67:25; 69:12-15.) Additionally, the spinal stimulator's battery life is approximately seven to nine years. (*Id.* at 71:11-19.)

Since the accident, Plaintiff has also needed assistance with activities of daily living. It is undisputed that Plaintiff's daughter, Karrie Ruebke, lived with Plaintiff and her husband (i.e., Ms. Ruebke's father) after the accident and performed chores around the house. (Ruebke Dep., Doc. 54-4 at 10:15–25, 15:20-16:9.) Plaintiff's grandson, Christian Jackson, also moved in with Plaintiff and her husband (i.e., Mr. Jackson's grandfather) after the accident and assisted with household chores. (Jackson Dep., Doc. 54-5 at 5:23-24, 8:3–15.)

Defendant initially argued in its summary judgment motion that Plaintiff forfeited coverage for damages stemming from her inability to perform activities of daily living and the spinal cord stimulator medical expenses because she failed to submit written documentation of her damages as required by the terms of her insurance policy. (*See* Doc. 54 at 9–13.) Defendant also argued

---

[1] Whether Plaintiff needed the spinal cord stimulator because of the car accident remains in dispute. However, there is no dispute that the spinal cord stimulator procedure was done after the accident.
[2] The parties disagree as to the extent of this continual monitoring and follow-up appointments. (*See* Doc. 58 at 3.)

that Plaintiff lacks evidence her physical therapy is causally related to the September 10, 2018, accident. (*See Id.* at 13.) Lastly, Defendant argued (1) that Plaintiff's witness, Dr. John Fan, lacks foundation to testify about Plaintiff's future medical expenses, and (2) her evidence does not support a damages award for economic loss as a result of her inability to perform household services and activities. (*See Id.* at 14–15.)

However, Defendant withdrew its motion for summary judgment regarding its claim that Plaintiff failed to submit the required documentation. (Doc. 58 at 1.) And Plaintiff conceded that she lacks evidentiary support that her physical therapy was causally related to the accident. (Doc. 55 at 20.) Therefore, the remaining issue is whether Plaintiff provided sufficient evidence to create a dispute of material fact such that a jury should determine her damages for future medical expenses and economic loss of household services.

**II.   Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies. D. Kan. R. 56.1(a). "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the

opposing party." *Id.* To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1). Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted. *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in Blue Cross's summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

**III.     Analysis**

    **A.     Future Medical Expenses**

Defendant argues that Dr. Fan, Plaintiff's pain management physician who performed the spinal cord stimulator surgery, lacks foundation to testify about her future medical expenses because he is unfamiliar with the cost of the medical services he provides. (*See* Doc. 58 at 6.) The basis for Defendant's argument is that Dr. Fan testified in his deposition that he is not knowledgeable about the Hutchinson Clinic billing practices. (*See* Fan Dep., 55-1, Vol. 2 at 19:7–11.) Defendant admits that Kansas law does not require absolute certainty with future medical expenses.[3] (Doc. 58 at 9.) Nevertheless, Defendant argues that Plaintiff has failed to provide "some basis" for a jury to calculate her future medical costs because her key witness lacks foundation to testify about such matters. (*See Id.*)

Plaintiff, by contrast, argues Dr. Fan will provide the jury with a basis to calculate a damages award because he can testify about her future medical needs. (Doc. 55 at 21.) He will testify about the spinal cord stimulator operation, future welfare visits related to the stimulator, and the necessary operations to replace the stimulator every seven to nine years. (*Id.* at 21–22.)

---

[3] *See Kendrick v. Manda*, 38 Kan. App. 2d 864, 871, 174 P.3d 432, 437 (2008)

Moreover, during Dr. Fan's deposition, he identified and discussed Plaintiff's billing statement for the spinal cord stimulator operation. (*Id.* at 22.)

The court finds Plaintiff has sufficient admissible evidence for a jury to calculate a damages award for future medical expenses. Under Kansas law, a jury may estimate a Plaintiff's medical damages so long as "there is a reasonable basis for the computation." *Kendrick*, 174 P.3d at 437. Here, Plaintiff's doctor is going to testify about her future medical needs: her future office visits, procedures, and care regarding the spinal cord stimulator he implanted during a surgical procedure. The court finds Defendant's argument difficult to appreciate. After all, who else, but Plaintiff's doctor, would have the knowledge to testify about her anticipated medical care? Moreover, if Defendant is concerned that the jury will be forced to conjure an award out of thin air, Plaintiff has a billing statement that provides context in the form of actual dollar amounts for Dr. Fan's services. (*See* Doc. 55-3). Thus, at this point in the proceeding, it is a jury's responsibility to grant and calculate a damages award for future medical expenses.

Defendant may disagree with Plaintiff's future medical costs, finding her anticipated office visits and future procedures as exaggerated or even unnecessary. That is fine. But it is Defendant's responsibility to cast doubt on Plaintiff's requested damages through cross examination.

Therefore, Defendant's motion for summary judgment on Plaintiff's damages claim for future medical expenses is denied.

### B. Household Services

Defendant next argues a jury will be unable to assess Plaintiff's alleged economic losses resulting from her inability to perform household services. Defendant asserts that she lacks evidence required to evaluate her claim. (Doc. 54 at 15.) According to Defendant, Plaintiff's designated witnesses Terry Jackson (her husband), Karrie Ruebke (her daughter), Christian

Jackson (her grandson), and herself will be unable to testify to the *value* of the household services. Defendant makes this assertion despite acknowledging that Karrie Ruebke and Christian Jackson assisted Plaintiff and her husband with their household chores.  (Doc. 54 at 7–8.)  Without saying so explicitly, it seems Defendant would like Plaintiff to (1) hire an expert witness to quantify her alleged economic loss, and (2) in response to the summary judgment motion, give a detailed account of the evidence she plans to present at trial related to her inability to perform household chores.

Plaintiff argues that she and her family members' testimony will provide sufficient evidence for the jury to determine a damages award for loss of household services. Admittedly, Plaintiff does not direct the court to deposition testimony, affidavits, or evidence in the record that indicate she has suffered household economic damages.  However, she asserts that her witnesses will testify about the assistance they provided to her.  (Doc. 55 at 27.)

After reviewing the briefings and the uncontroverted facts about Plaintiff's grandson and daughter assisting her with household chores and activities, the court concludes that there is sufficient evidence to create a dispute of material fact regarding Plaintiff's damages claim for household activities.  Under Kansas law, a plaintiff does not need an expert witness to "translate the loss of services, care and guidance into a specific monetary figure . . . ."  *Wentling v. Med. Anesthesia Servs., P.A.*, 237 Kan. 503, 514, 701 P.2d 939, 948 (1985), *holding on different issue modified by Martinez v. Milburn Enterprises, Inc.*, 290 Kan. 572, 233 P.3d 205 (2010).  Indeed, the Kansas Supreme Court acknowledged that many of these services lack an "exact economic valuation."  *Id.* (emphasis in original).  This does not mean that Plaintiff should be unable to recover damages for loss of household services or that a jury is incapable of "exercising its collective experience and judgment in this matter."  *Id.*  Moreover, the testimony of family

members is typically the evidence that supports damages awards for loss of household services. *See id.* Here, Plaintiff has informed Defendant that four individuals will testify about the economic loss associated with her inability to perform household activities. Defendant admits to this. (Doc. 58 at 10.) Those witnesses are Plaintiff's husband, daughter, grandson, and herself. Certainly, Plaintiff and her husband are able to speak to her diminished abilities. Additionally, Plaintiff's daughter and grandson will be able testify to her lessened capabilities because they lived with Plaintiff and performed household chores for Plaintiff and her husband. (Ruebke Dep., Doc. 54-4 at 10:15–25, 15:20-16:9; Jackson Dep., Doc. 54-5 at 5:23-24, 8:3–15.)

      Presumably, if Plaintiff had hired someone to perform these services for her, we would not be having this discussion because the value of the services would be reflected in the bills. Defendant would deny Plaintiff the value of these services simply because Plaintiff apparently cultivated a sufficiently positive relationship with her daughter and grandson over the years that they are willing to help her at little if any cost. Conversely, had Plaintiff mistreated these family members to the point that they would not lift a finger to help her, then damages would be recoverable to pay someone else to do it. That is not how it works under Kansas law. Juries are entrusted to value less tangible harms like pain and suffering which are considered noneconomic losses. *See Burnette v. Eubanks*, 308 Kan. 838, 868, 425 P.3d 343, 362 (2018) (citation omitted) (discussing why for practical reasons it is the province of the jury to determine pain and suffering damages because they cannot be evaluated mathematically). Likewise, juries are entrusted to value medical services where the billed amounts differ substantially from the amounts accepted by the provider under insurance contracts or from other negotiations with the patient. *See Martinez v. Milburn Enters.*, 290 Kan. 572, 600, 233 P.3d 205, 222 (2010) (discussing how the jury when calculating the reasonable value of medical expenses may consider evidence that an amount less

than that charged satisfied a medical bill). Indeed, in the medical insurance context, leaving that task to the jury makes even more sense because the contractual buydown of the cost of services may sometimes only be realized after the patient has either invested decades of insurance premium payments, and/or otherwise had his or her wages extorted for years by government programs like Medicare, to hedge against these very risks of expensive medical services. Thus, the jury can consider those sorts of factors when deciding whether the reasonable value of medical services is closer to the billed amount or the contractual amount under the insurance policy. Similarly, in this case, the jury can decide whether the value of the services provided by Plaintiff's family members is closer to nothing because they didn't charge her for it, or whether, in the light of common experience, those services have a higher value that should not be discounted merely because Plaintiff experiences the blessings of loved ones who will help her out of the goodness of their hearts.

Defendant may disagree with Plaintiff and her witnesses' testimony about her inability to perform household tasks. It may find the testimony disingenuous, exaggerated, or both. This then behooves Defendant to prepare for a strong cross-examination of Plaintiff and her witnesses to demonstrate to the jury why Plaintiff is underserving of the damages she requests.

Thus, Defendant's motion for summary judgment regarding Plaintiff's damages claim for loss of household services is denied.

## IV. Conclusion

THEREFORE, viewing the evidence and the reasonable inferences therefrom in the light most favorable to Plaintiff, Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.  Dated this 11th day of April, 2025.

/s/ Judge John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE